**Robert D. STOREY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 20A03–0607–CR–317.

Court of Appeals of Indiana.

Oct. 22, 2007.

Transfer Denied Jan. 3, 2008.

Kenneth R. Martin, Goshen, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Following re-trial, Robert D. Storey ("Storey") appeals his convictions and sentences for Possession of Methamphetamine in Excess of Three (3) Grams with Intent to Deliver and Manufacture of Methamphetamine in Excess of Three (3) Grams. Storey argues that his separate convictions for these two crimes violate Indiana's Dou-

ble Jeopardy Clause, that the trial court abused its discretion in its consideration of the aggravating and mitigating circumstances, and that his sentence is inappropriate in light of the nature of the offenses and his character. Finding that the State sufficiently distinguished the possession offense from the manufacturing offense and provided independent evidence to support both convictions, we conclude that Storey's possession and manufacturing convictions do not violate Indiana's Double Jeopardy Clause. As to his sentence, we find that the trial court did not abuse its discretion in its consideration of the aggravating and mitigating circumstances in arriving at a sentence and that his sentence is not inappropriate.

### Facts and Procedural History

On July 21, 2003, area residents noticed an unfamiliar maroon vehicle and two men by a cornfield near Glen Graber's ("Graber") Elkhart, Indiana, farm. After being notified, Graber's son, Kenneth, went to the field to investigate. Soon thereafter, Graber and a neighbor joined up with Kenneth, and the men observed two sets of footprints leading into the cornfield and in close proximity to a nearby tank, later found to contain anhydrous ammonia, which is commonly used in the production of methamphetamine. Simultaneously, the men observed a maroon car in the area, which they followed into Millersburg before deciding to return to the cornfield. While en route back to the cornfield, they called the Elkhart County Sheriff's Department and Eugene Moser ("Moser"), another neighbor. Moser met Graber and the other men at the edge of the field while they waited for the officers to arrive. While waiting for the officers, Storey emerged from the cornfield wearing heavy clothing on a warm day and sweating profusely. Startled at the sight of the men, Storey explained that he was looking for

his dog and then began walking toward an adjacent railroad. When Kenneth followed, Storey ran and hid in some tall grass. Deputy Sheriff Jason Reaves arrived on the scene and quickly apprehended Storey. The police and others eventually found several items in the field used to manufacture methamphetamine, including containers, Draino cans, ether, batteries that were cut apart, liter bottles, and jars containing an orange-pink substance. Additionally, the authorities found finished methamphetamine weighing a total of 34.789 grams and unfinished methamphetamine that, if finished, would have yielded approximately twenty-eight grams.

Thereafter, the State charged Storey with Possession of Methamphetamine in Excess of Three (3) Grams with Intent to Deliver ("possession") and Manufacture of Methamphetamine in Excess of Three (3) Grams ("manufacturing").[1] Storey's first trial resulted in convictions on both counts that were reversed on appeal due to a violation of Storey's Fifth Amendment right to counsel. *Storey v. State,* 830 N.E.2d 1011 (Ind.Ct.App.2005). After retrial, Storey was again convicted of possession and manufacturing. In its sentencing order, the trial court identified four aggravating circumstances:[2] (1) his criminal history, namely, three felony convictions, one of which was for delivery of LSD and other controlled substances, and three misdemeanor convictions, at least one of which

involved controlled substances; (2) the fact that Storey admitted to committing this offense while on bond; (3) imposition of less than an aggravated sentence would depreciate the seriousness of this particular offense in light of Storey's lengthy criminal history; and (4) that fines, costs, and short-term incarceration all have proven ineffective in rehabilitating Storey. The court identified as a mitigating circumstance that Storey has drug addiction issues. Finding that the aggravators outweigh the mitigator, the trial court sentenced Storey to forty-five years on each count, to be served concurrently. Storey now appeals.

## Discussion and Decision

■ On appeal, Storey raises three issues: (1) whether his convictions for possession and manufacturing violate Indiana's Double Jeopardy Clause; (2) whether the trial court abused its discretion in weighing the aggravators and mitigator; and (3) whether his sentence is inappropriate.[3] We address each in turn.

### I. Double Jeopardy

■ Storey argues that his convictions for possession and manufacturing violate the Double Jeopardy Clause of the Indiana Constitution. Article I, § 14 of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." The Indiana Supreme Court set forth a two-part test for analyzing double

---

1. Ind.Code § 35–48–4–1 (Supp.2001). Subsequently, the Indiana General Assembly enacted Indiana Code § 35–48–4–1.1, which deals exclusively with methamphetamine offenses.

2. At Storey's sentencing hearing, the trial court considered an additional aggravator—Storey's admission that there was a risk that he would commit another crime—but did not reference this aggravator in its sentencing order. Storey does not challenge this aggravator on appeal.

3. Between the date of Storey's offense, July 21, 2003, and the date of sentencing, April 27, 2006, the General Assembly replaced the former presumptive sentencing scheme with the current advisory sentencing scheme. *See* P.L. 71–2005 (eff. April 25, 2005). Nonetheless, because "the sentencing statute in effect at the time a crime is committed governs the sentence for that crime," *Gutermuth v. State,* 868 N.E.2d 427, 431 n. 4 (Ind.2007), we address Storey's sentence under the presumptive sentencing scheme.

jeopardy claims under our state constitution in *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999). In particular, our Supreme Court established that two or more criminal offenses violate our Double Jeopardy Clause if, with respect to either the statutory elements of the charged offenses or the actual evidence used to convict, the essential elements of one challenged offense establish the essential elements of the other offense. *Id.* Here, Storey contends that his convictions for possession and manufacturing violate the actual evidence test.

Under the actual evidence test, the evidence presented at trial is examined to determine whether each offense was proven by separate and distinct facts. *Id.* at 53. The defendant must demonstrate a "reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* "Application of the actual evidence test requires us to identify the essential elements of each challenged crime and to evaluate the evidence from the jury's perspective, considering where relevant the jury instructions, argument of counsel, and other factors that may have guided the jury's determination." *Lamagna v. State,* 776 N.E.2d 955, 959 (Ind.Ct. App.2002).

Here, Storey was charged with and convicted of two violations of Indiana Code § 35–48–4–1 (Supp.2001), which provided in pertinent part as follows:

(a) A person who:
   (1) knowingly or intentionally:
      (A) manufactures . . .
   methamphetamine . . . or
   (2) possesses, with intent to: . . .
      (C) deliver . . .
   methamphetamine . . .

commits dealing in . . . methamphetamine, a Class B felony, except as provided in subsection (b).

(b) The offense is a Class A felony if:

(1) the amount of the drug involved weighs three (3) grams or more[.]

Although both charges were for dealing in methamphetamine, they were expressed in terms of possession of methamphetamine in excess of three grams with intent to deliver and manufacture of methamphetamine in excess of three grams.

The State argues the convictions were supported by two separate and distinct instances of criminal conduct and, therefore, do not violate double jeopardy principles. Specifically, the State argues that the finished product supports the possession conviction and that the unfinished product supports the manufacturing conviction. In a related case, Storey's co-defendant, Joseph D. Caron ("Caron"), was separately charged, tried, convicted, and sentenced for the same offenses as Storey. Another panel of this Court affirmed Caron's conviction for the manufacturing offense and vacated his conviction and sentence for the possession offense, citing double jeopardy concerns, namely, that "there is at least a reasonable possibility the jury used the same evidence to establish the essential elements of the two offenses." *Caron v. State,* 824 N.E.2d 745, 754 (Ind.Ct.App.2005), *trans. denied.* The *Caron* Court deemed these two convictions to violate double jeopardy principles because the finished product found in the field was used to prove the manufacturing offense and was the sole evidence used to prove the possession offense.

However, in an accompanying footnote, the *Caron* Court noted, "the State may have been able to support dual convictions by carefully parsing the evidence at trial. That is, the finished product from the ini-

tial batch could have been used to support the possession offense, and evidence regarding the second (unfinished) batch possibly could have been expanded upon to support the manufacturing offense as charged or a lesser charge." *Id.* at 754 n. 6. In an apparent attempt to heed the *Caron* Court's recommendation of how to avoid a double jeopardy problem, the State, here, carefully parsed the evidence at trial, relying primarily on the finished product of methamphetamine (34.789 grams) to support the possession offense and the unfinished product (approximately twenty-eight grams) to support the manufacturing offense. Additionally, the State presented two separate theories of conduct in support of the possession and manufacturing offenses.

With regard to possession, the State set forth the following in its closing argument:

Count I, possession with intent to deliver. The elements of the crime are that this defendant, Robert Storey, knowingly possessed with intent to deliver methamphetamine, three grams or more. Okay? Robert Storey had been identified, through the evidence, as the man who came out right next to the jar that was filled with the pink-orange substance and the *finished* methamphetamine product that was tested by Berrien County Lab.... This is where the tank was, right around in this area and this was where the *finished* product was, right around this area. And if you will recall, the testimony was that there were two sets of tracks coming up and down.... They find him popping out of there, they see him run away from Ken Graber and he is then cornered in a thicket when [Deputy] Reaves comes. All testimony is that it is Robert Storey who pops out of the corn and it is Robert Storey who then pops out of the thicket.

*Knowingly*.... Knowingly means that you have ... circumstances that would show that, in fact, you know what's going on around you.... If [you] recall the testimony, the testimony was that there were footprints, there were gloves on, there was a long-sleeve shirt in the middle of July. He's sweating profusely and he pops out right next to all the *finished* product. You can infer that he knowingly possessed that methamphetamine and that jar, which was an operational meth lab.

Now, ... intent to deliver is another part of that. You will have a jury instruction and that jury instruction is to the law in the State of Indiana. The judge is going to read this to you. *Intent to deliver* is a mental state for which you may consider the surrounding circumstances. Circumstantial evidence of intent to deliver may include, but is not limited to, possession of an amount of methamphetamine greater than is needed for personal use[.] ... Now, the one that is appropriate in this particular case as far as circumstantial evidence is, is the amount of methamphetamine that is greater than needed for personal use.... Deputy Reaves, who has testified about his extensive experience in methamphetamine use as an undercover, or semi-undercover, officer ... has testified that the amount that was found, which was 34 grams, was way in excess of anything that could be, possibly, used for personal use.... We have satisfied the elements of Count I.

Tr. p. 323–27 (emphasis added).

With regard to manufacturing, the State set forth the following:

Count II. Manufacturing of the methamphetamine charge. We have to show that Robert Storey knowingly manufactured methamphetamine, pure or adul-

terated, in the amount greater—three grams or more.

*Manufacturing* is another issue that will be discussed through the jury instructions.... Manufacturing methamphetamine—the definition of that, is the production, prepare [sic], propaganda, compounding, conversion, processing of a controlled substance, either directly or indirectly, by extraction from substances of natural origin, independently by means of chemical synthesis[.] ... *Chemical synthesis.* As you heard from Don McCay who is a specialist in meth labs and methamphetamine manufacture[,] [t]he chemical synthesis, or reaction that goes on in the reaction vessel, is the process of making methamphetamine. And that is an active methamphetamine lab. Deputy Reaves and Don McCay had testimony to that effect. That is an operational meth lab that was in Mr. Moser's cornfield. And, obviously, it is bolstered by the fact that all of the other items that were found in that cornfield the next day, strewn about, deeper into the six feet tall corn that were not readily apparent on July 21, all comport to have elemental substances that you have to have in methamphetamine, and at certain stages of methamphetamine. Once there's a reaction going on, the law allows that that is an actual manufacture. Once something is mixed and a reaction is occurring, and that's what we had in those jars.

*Id.* at 327–28.

It is evident to us that the State carefully parsed the evidence pertaining to both the possession and manufacturing offenses.

In doing so, the State set forth independent evidence that Storey (1) possessed methamphetamine in excess of three grams with the intent to deliver and (2) manufactured methamphetamine in excess of three grams. Under these circumstances, the State sufficiently distinguished the possession offense from the manufacturing offense and provided independent evidence to support both convictions. We therefore cannot say Storey's possession and manufacturing convictions violate Indiana's Double Jeopardy Clause.

## II. Sentence Enhancement

Storey next contends that the trial court abused its discretion in finding and weighing the aggravators and mitigator.[4] At the time of Storey's offense, Indiana Code § 35–50–2–4 provided in relevant part: "A person who commits a Class A felony shall be imprisoned for a fixed term of thirty (30) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances."

In general, sentencing lies within the discretion of the trial court. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind.2002). As such, we review sentencing decisions only for an abuse of discretion, "including a trial court's decision to increase or decrease the presumptive sentence because of aggravating or mitigating circumstances." *Id.* Furthermore, "[w]hen enhancing a sentence, a trial court must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reasons why each circumstance is aggravating or mitigating; and

---

**4.** In its appellate brief, the State relies on *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *reh'g pending*, to support its contention that the trial court did not abuse its discretion in considering the aggravators and mitigator pertaining to Storey's sentences. However, *Anglemyer* addresses the scope of appellate review of sentences under Indiana's current advisory scheme, which went into effect on April 25, 2005. Because Storey committed his offenses on July 23, 2003, he was sentenced under Indiana's former presumptive sentencing scheme. Thus, *Anglemyer* is not applicable to this case.

(3) evaluate and balance the mitigating against the aggravating circumstances to determine if the mitigating offset the aggravating circumstances.'" *Vazquez v. State,* 839 N.E.2d 1229, 1232 (Ind.Ct.App. 2005), *trans. denied* (quoting *Bailey v. State,* 763 N.E.2d 998, 1004 (Ind.2002)). A single aggravating circumstance is adequate to justify an enhanced sentence. *Moon v. State,* 823 N.E.2d 710, 717 (Ind. Ct.App.2005), *reh'g denied, trans. denied.*

### A. Aggravators

Storey argues that the trial court abused its discretion in finding and weighing certain aggravators. The trial court found four aggravating circumstances: (1) Storey's criminal history, namely, three felony convictions, one of which involved delivery of LSD and other controlled substances, and three misdemeanor convictions, at least one of which involved controlled substances; (2) the fact that Storey admitted to this offense while on bond; (3) imposition of less than an aggravated sentence would depreciate the seriousness of this particular offense in light of Storey's lengthy criminal history; and (4) that fines, costs, and short-term incarceration all have proven ineffective in rehabilitating Storey. Storey challenges aggravators (1) and (3).

■ First, Storey argues that the trial court abused its discretion by placing significant weight on his criminal history as an aggravating circumstance. Specifically, Storey contends that "[t]he remoteness in time of these prior felony convictions, especially the two from 24 years ago, seriously decreases their weight" and "[t]he misdemeanor convictions referred to by the trial court consist of Police Officer Refusal To Obey from 1991, Operating Impaired from the same date, and Operating While Suspended, Revoked, from the same

date, all apparently resulting from the same incident." Appellant's Br. p. 15.

■ The extent, if any, that a sentence should be enhanced turns on the weight of an individual's criminal history, which is measured by the number of prior convictions and their gravity, by their proximity or distance from the present offense, and by any similarity or dissimilarity to the present offense that might reflect on a defendant's culpability. *Duncan v. State,* 857 N.E.2d 955, 959 (Ind. 2006). However, "we will not say that remoteness in time, to whatever degree, renders a prior conviction irrelevant." *Wooley v. State,* 716 N.E.2d 919, 929 (Ind. 1999), *reh'g denied.* The remoteness of previous criminal history does not preclude the trial court from considering it as an aggravating circumstance. *Bowling v. State,* 493 N.E.2d 783, 787 (Ind.1986). Storey was previously convicted of three felony convictions, one of which was for the delivery of LSD and other controlled substances, as well as three misdemeanor convictions, at least one of which involved controlled substances. Given that much of Storey's criminal history relates to his life-long drug and substance abuse, the trial court did not abuse its discretion in finding it to be a significant aggravating factor.

■ Storey next contends that the trial court abused its discretion by finding as an aggravating circumstance that less than an aggravated sentence would depreciate the seriousness of Storey's crimes. Specifically, he maintains "the 'depreciate the seriousness' aggravator would seem to be improper where, as here, there is no indication that the trial court was considering imposing anything less than the presumptive sentence." Appellant's Br. p. 15–16. We cannot agree. In *Ector v. State,* 639 N.E.2d 1014, 1016 (Ind.1994), *reh'g denied,* our Supreme Court stated:

An alternate form of the "depreciate seriousness" aggravator focuses upon the imposition of an enhanced, rather than a reduced, sentence. Although not enumerated in the sentencing statute, consideration of such as an aggravating circumstance is permitted because the statutory list of aggravating factors is not exclusive. This Court has thus upheld sentence enhancement based upon a finding that a sentence less than an *enhanced* term sought by the prosecution would depreciate the seriousness of the crime.

(Citations omitted); *see Mathews v. State*, 849 N.E.2d 578, 590 (Ind.2006) ("[I]t is not error to enhance a sentence based upon the aggravating circumstance that a sentence less than the enhanced term would depreciate the seriousness of the crime committed."). Here, the trial court stated, "The Court notes that the imposition of less than an aggravated sentence would depreciate from the seriousness of this particular offense in light of the Defendant's lengthy criminal history." Appellant's App. p. 182. Because the trial court's statement pertains to the imposition of an enhanced, rather than a reduced, sentence, it did not abuse its discretion in considering this to be an aggravating circumstance.

To summarize, all of the aggravating circumstances relied upon by the trial court in this case were proper.

### B. Mitigators

■ Storey next argues that the trial court abused its discretion by failing to consider his poor health as a mitigating circumstance. Specifically, Storey contends that he "has cirrhosis of the liver and Hepatitis C; it is submitted that Storey has paid, and continues to pay a heavy price for his chemical abuse. This is a mitigator that was developed in the record and should have been considered by the trial court." Appellant's Br. p. 16. The trial court heard testimony regarding Storey's illnesses but did not consider his deteriorating health as a mitigating circumstance.

■ "The finding of mitigating factors is not mandatory and rests within the discretion of the trial court." *O'Neill v. State*, 719 N.E.2d 1243, 1244 (Ind.1999). The trial court is not obligated to accept the defendant's arguments as to what constitutes a mitigating factor. *Gross v. State*, 769 N.E.2d 1136, 1140 (Ind.2002). "Nor is the court required to give the same weight to proffered mitigating factors as the defendant does." *Id.* However, the trial court may "not ignore facts in the record that would mitigate an offense, and a failure to find mitigating circumstances that are clearly supported by the record may imply that the trial court failed to properly consider them." *Sherwood v. State*, 749 N.E.2d 36, 38 (Ind.2001), *reh'g denied.* An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to show that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind.1999).

Here, the trial court recognized Storey's illnesses; consequently, it did not simply overlook his poor health, as Storey suggests. Moreover, Storey's poor health is a direct consequence of his own lifelong drug and substance abuse. We therefore cannot say that the trial court erred by not considering Storey's poor health as a mitigating circumstance when his own drug involvement is the direct cause of his deteriorating health. Accordingly, we conclude that the trial court did not abuse its discretion by declining to consider Storey's poor health to be a mitigating circumstance.

### III. Inappropriate Sentence

■ Storey also argues that his sentences are inappropriate in light of the nature of the offenses and his character.

Indiana Rule of Appellate Procedure 7(B) states: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Purvis v. State*, 829 N.E.2d 572, 587 (Ind.Ct. App.2005) (internal citations omitted), *trans. denied, cert. denied,* 547 U.S. 1026, 126 S.Ct. 1580, 164 L.Ed.2d 310 (2006). The burden is on the defendant to persuade us that the sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006). After due consideration of the trial court's decision, we cannot say that Storey's sentence is inappropriate.

The nature of the offenses is serious. Storey possessed a large quantity of methamphetamine with the intent to deliver it to others. He also was undertaking the dangerous process of manufacturing many more grams of methamphetamine before getting caught. As to Storey's character, he has a criminal history consisting of three felony convictions, one of which was for delivery of LSD and other controlled substances, and three misdemeanor convictions, at least one of which involved controlled substances. Given the nature of his offenses and his character, Storey's enhanced sentences of forty-five years are not inappropriate.

Affirmed.

BAKER, C.J., and BAILEY, J., concur.