## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 29 2018, 6:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen Celestino-Horseman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Taylor Fagan,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | June 29, 2018<br><br>Court of Appeals Case No.<br>49A04-1710-CR-2424<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Helen W. Marchal, Judge<br><br>Trial Court Cause No.<br>49G15-1510-F6-36221 |

**May, Judge.**

[1] Taylor Fagan appeals her convictions of Level 6 felony battery against a public safety official,[1] Class A misdemeanor resisting law enforcement,[2] and Class B misdemeanor disorderly conduct.[3] Fagan asserts her convictions subjected her to double jeopardy because the same act was the basis for all three offenses. We reverse in part and remand.

## Facts and Procedural History

[2] On the night of October 9, 2015, Fagan and her then-boyfriend Kalib Hall-Watts attended a basketball game and then went to Tiki Bob's Cantina in downtown Indianapolis. Shortly after midnight, on October 10, 2015, Fagan and Hall-Watts were forcibly escorted from Tiki Bob's by security. The security manager, Lawrence Crutcher, helped escort the couple out of the bar.

[3] Indianapolis Metropolitan Police Officer John Walters was working as outside security at Tiki Bob's. Officer Walters was in full uniform and stood beside his fully marked police car. Officer Walters saw the couple be ejected from the bar. Fagan and Hall-Watts were belligerent and yelling profanities. Officer Walters requested the couple leave the area to avoid arrest. The couple continued trying to re-enter the bar, and they shouted at Officer Walters and the bar security personnel. Finally, Officer Walters grabbed Hall-Watts and pulled him away

---

[1] Ind. Code § 35-42-21 (2014).

[2] Ind. Code § 35-44.1-3-1 (2014).

[3] Ind. Code § 35-45-1-3 (2014).

from the entrance to the bar. As Officer Walters did so, Hall-Watts fell down. Hall-Watts stood back up and took an aggressive stance toward Officer Walters. Officer Walters warned the couple to either leave or be tased and arrested.

[4] Hall-Watts began "taking off his jacket in like a display that he was going to fight [Officer Walters.]" (Tr. at 32.) Fagan "rushed up to [Officer Walters] and pushed [him] with both her hands in the chest and then tried to do an overhand punch which ended up hitting [Officer Walters] on [his] right shoulder." (*Id*.) Fagan continued to yell profanities. Officer Walters pushed Fagan away. Hall-Watts then charged Officer Walters, and Officer Walters "deployed [his] taser[.]" (*Id*. at 33.) When Hall-Watts fell to the ground from the taser, Officer Walters attempted to place handcuffs on him. However, Fagan "tried to do like a linebacker tackle [to] shove [Officer Walters] off of [Hall-Watts'] back." (*Id*. at 34.) Although Fagan did not dislodge Officer Walters, she continued screaming and attempting to pull Officer Walters off Hall-Watts.

[5] Seeing Officer Walters contending with two subjects, Crutcher stepped out and "grabbed [Fagan] and forced her down onto the ground next to [Hall-Watts.]" (*Id*. at 36.) Fagan continued to resist and "beg[a]n clawing at [Officer Walters'] legs and then was able to reach up on to [his] duty belt." (*Id*.) She ripped the lanyard off the radio holder. Still "claw[ing] and grab[bing]" at Officer Walters, Fagan "grabbed the holster of [Officer Walters'] gun." (*Id*. at 42.) Officer Walters then punched Fagan "twice in the face." (*Id*.) Other officers arrived and both Fagan and Hall-Watts were arrested. However, even after being

handcuffed, Fagan continued "screaming and kicking at officers and cussing at [them] and was still out of control." (*Id*. at 45.)

[6] The State charged Fagan with Level 6 felony battery against a public safety officer, Class A misdemeanor resisting law enforcement, Class B misdemeanor disorderly conduct, and Class B misdemeanor public intoxication.[4] A jury found her guilty of the first three counts but not the public intoxication. The court entered convictions of all three and imposed an aggregate sentence of 365 days.

# Discussion and Decision

[7] Fagan asserts her convictions violate her constitutional right to be free of double jeopardy, and she requests her convictions be reversed. *See* Ind. Const. art. 1, § 14 ("No person shall be put in jeopardy twice for the same offense."). Two offenses are the "same offense" in violation of Indiana's Double Jeopardy Clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Spivey v. State,* 761 N.E.2d 831, 832 (Ind. 2002). We review *de novo* whether a defendant's convictions violate this provision. *Spears v. State,* 735 N.E.2d 1161, 1166 (Ind. 2000), *reh'g denied.*

---

[4] Ind. Code § 7.1-5-1-3 (2012).

[8]     Fagan alleges her convictions violate the "actual evidence test."  The actual evidence test requires us to "determine whether each challenged offense was established by separate and distinct facts." *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999), *holding modified by Garrett v. State*, 992 N.E.2d 710 (Ind. 2013).[5] To determine what facts were used to convict, we consider the evidence, charging information, final jury instructions, and arguments of counsel. *Davis v. State,* 770 N.E.2d 319, 324 (Ind. 2002), *reh'g denied.*  Fagan asserts that, because the State argued several different acts in support of each charge and because no jury instruction was given to prohibit the jury from relying on one act to support all three convictions, it is "reasonably likely" the jury did so.  (Appellant's Br. at 7.)  It is a violation of double jeopardy principles if it is reasonably possible "the jury used the same evidence to establish the essential elements of the [] offenses." *Carroll v. State*, 740 N.E.2d 1225, 1233 (Ind. Ct. App. 2000), *trans. denied*.

[9]     To obtain the three convictions, the State was required to prove Fagan had "knowingly or intentionally . . . touche[d a public safety official] in a rude, insolent, or angry manner[,]" Ind. Code § 35-42-2-1(b)(1) (2014) (battery); "knowingly or intentionally . . . forcibly resist[ed], obstruct[ed], or interfere[d] with a law enforcement officer . . . while the officer is lawfully engaged in the execution of the officer's duties[,]" Ind. Code § 35-44.1-3-1(a)(1) (2014)

---

[5] This modification does not affect the portion of *Richardson* relied on by this memorandum decision.

(resisting); and "knowingly, or intentionally . . . engage[d] in fighting or in tumultuous conduct[.]" Ind. Code § 35-45-1-3(a)(1) (2014) (disorderly conduct).

[10] The charging information for battery alleged Fagan "punch[ed] and/or push[ed]" Officer Walters. (App. Vol. II at 80.) The charging information for the other crimes did not, however, indicate what distinct acts by Fagan constituted the forcible resistance, obstruction or interference required for resisting law enforcement or what distinct acts constituted the fighting required for disorderly conduct.[6]

[11] At trial, the State presented evidence of the following acts by Fagan. Fagan had "rushed up to [Officer Walters] and pushed [him] with both her hands in the chest and then tried to do an overhand punch which ended up hitting [him] on [his] right shoulder[.]" (Tr. at 32.) Officer Walters gave Fagan "commands to stop resisting." (*Id*. at 36.) Fagan tackled Officer Walters, tore Officer Walters' radio lanyard, and touched Officer Walters' gun holster. Fagan continued to struggle after being handcuffed, and she was screaming profanities and fighting with Officer Walters and the bar security personnel. The State did not present any of these acts as pertinent to any particular charge.

---

[6] The charging information alleged: 1) in support of the battery against a public safety official charge, Fagan "punch[ed] and/or push[ed]" Officer Walters; 2) in support of the resisting law enforcement charge, Fagan "forcibly resist[ed], obstruct[ed], or interfer[ed]" with Officer Walters' attempts to enforce the law; and 3) in support of the disorderly conduct charge, Fagan "engage[d] in fighting[.]" (App. Vol. II at 24, 80.)

[12]    During closing arguments, the State told the jury about the elements of each charge, *i.e.*, that battery requires a touching in a rude, insolent, or angry fashion; that resisting law enforcement requires forcible obstruction, resistance, or interference with an officer; and that disorderly conduct requires imminent danger of breaching the peace or actual breaching of the peace and fighting.[7] When discussing the battery charge, the State argued, amongst other things, "Fagan[] walked up to [Officer Walters] and pushed him with both hands." (*Id.* at 131.) While arguing sufficient evidence had been presented to convict on the resisting charge, the State noted Officer Walters "pushe[d Fagan] on her way after [Fagan] pushed him." (*Id.* at 133.) As to the disorderly conduct, the State argued Fagan had breached the peace during this whole scenario, because she was fighting, and did not specify any particular act that was distinct from the other charges.

[13]    The preliminary jury instructions, along with including the charging information, gave the statutory elements of each charge:

> PRELIMINARY INSTRUCTION NO. 5
>
> > The crime of Battery on a Public Safety Official is defined by law as follows:
> >
> > A person who knowingly or intentionally touches a public safety official in a rude, insolent, or angry manner, while

---

[7] In closing, the State first argued Fagan had breached the peace. In its rebuttal argument, it clarified the disorderly charge required proof Fagan had been fighting.

the official is engaged in the official's official duty, commits Battery on a Public Safety Official, a Level 6 felony.

In order to prove the charge of Battery on a Public Safety Official, the State must have proved each of the following beyond a reasonable doubt:

1, Taylor Fagan;
2. knowingly;
3. touched Officer John Walters, a public safety official;
4. in a rude, insolent, or angry manner;
5. while Officer John Walters was engaged in his official duty.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Battery Against a Public Safety Official, a Level 6 Felony, charged in Count 1.

PRELIMINARY INSTRUCTION NO. 6

Resisting Law Enforcement is defined by law as follows:

A person who knowingly, and forcibly resists, obstructs, or interferes with a law enforcement officer while the officer is lawfully engaged in the execution of his duties as an officer, commits Resisting Law Enforcement, a Class A misdemeanor.

In order to prove the charge of Resisting Law Enforcement the State must prove each of the following elements beyond a reasonable doubt:

1. Taylor Fagan;
2. knowingly;
3. forcibly resisted, obstructed, or interfered with;
4. a law enforcement officer;
5. while the officer was lawfully engaged in the execution of his duties as an officer.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Resisting Law Enforcement, a Class A Misdemeanor charged in Count 2.

PRELIMINARY INSTRUCTION NO. 7:

The crime of Disorderly Conduct is defined as follows:

A person who recklessly, knowingly, or intentionally engages in fighting or tumultuous conduct commits Disorderly Conduct, a Class B misdemeanor.

In order to prove the Charge of Disorderly Conduct the State must prove each of the following elements beyond a reasonable doubt:

(1) Tyler [sic] Fagan;
(2) recklessly, knowingly, or intentionally;
(3) engaged in fighting or tumultuous conduct.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Disorderly Conduct, a Class B Misdemeanor charged in Count 3.

PRELIMINARY 1NSTRUCTION NO. 8:

The term "tumultuous conduct" is defined by law as meaning conduct that results in, or is likely to result in, serious bodily injury to a person or substantial damage to property.

(App. Vol. II at 100-4.)

[14] The final jury instructions included, in pertinent part:

FINAL INSTRUCTION NO. 8:

The Defendant is accused in Count 1 of having committed Battery on a Public Safety Official as a Level 6 Felony. The State has presented evidence that the Defendant may have committed more than one act of Battery on a Public Safety Official on or about October 10, 2015.

Before you may find the Defendant guilty, you must all unanimously find and agree that the State proved beyond a reasonable doubt the Defendant committed the same specific act of Battery on a Public Safety Official as a Level 6 Felony.

If you find the Defendant guilty, your verdict does not have to specify the particular act of Battery on a Public Safety Official committed by the Defendant.

FINAL INSTRUCTION NO. 9:

The Defendant is accused in Count 2 of having committed Resisting Law Enforcement as a Class A Misdemeanor. The State has presented evidence that the Defendant may have committed more than one act of Resisting Law Enforcement as a Class A Misdemeanor on or about October 10, 2015.

> Before you may find the Defendant guilty, you must all-unanimously find and agree that the State proved beyond a reasonable doubt the Defendant committed the same specific act of Resisting Law Enforcement as a Class A Misdemeanor.
>
> If you find the Defendant guilty, your verdict does not have to specify the particular act of Resisting Law Enforcement committed by the Defendant.

(*Id.* at 126-27.) The court gave no final instructions specific to disorderly conduct except that the jury was "to consider all of the instructions (both preliminary and final) together." (*Id.* at 116.)

[15] Fagan argues multiple acts were presented as evidence to support all three of the charges. Fagan argues the State "invited the jury to use the punch[8] as the basis for both the battery and the resisting charges" (Appellant's Br. at 12) (footnote added), and because the jury instructions did not inform the jury it needed to find separate acts to support each charge, it is reasonably likely the jury may have used the same act to support multiple charges.

[16] The State argues: 1) the pushing and punching support the charge of battery against a public safety official; 2) Fagan's attempts to tackle Officer Walters while he was trying to handcuff Hall-Watts together with her attempts to reach

---

[8] The State did not argue the "punch" was also part of the resisting law enforcement charge; rather, it mentioned the "push." The State's use of "punch[] and/or push[,]" (App. Vol. II at 80), in the charging information suggests Fagan's usage of "punch" in her argument is a scrivener's error.

for his holster support the charge of resisting law enforcement; and 3) Fagan's fighting with both Officer Walters and with Crutcher support the disorderly conduct charge. The State argues the charging information and the jury instructions "set forth the statutory elements" (Appellee's Br. at 9), of each charge and the State's closing argument made it clear which act pertained to each charge; thus, Fagan's rights against double jeopardy are not implicated.

[17] While the State is correct that Fagan committed enough acts for the jury to have found separate acts to independently support each charge, we agree with Fagan that the State's presentation of the case left it reasonably likely that the jury used one act to support all three charges. The jury instructions did not include an instruction requiring the jury to agree to a separate act as to each charge. The State invited the jury to use the "push" as support for both the battery charge and the resisting charge, and the State did not identify any specific act to support the disorderly conduct charge. The jury therefore was free to use, for example, the push to support all three charges. *Cf. Storey v. State*, 875 N.E.2d 243, 249 (Ind. Ct. App. 2007) (the State "carefully parsed the evidence at trial" to support convictions for both possession and manufacturing of methamphetamine), *trans. denied*. Because the jury may have relied on the same evidence to support all three convictions, we cannot say a double jeopardy violation did not occur.

[18] Fagan requests all her convictions be reversed because of the double jeopardy violation. However, when a double jeopardy violation has occurred, the "reviewing court may remedy the violation by reducing either conviction to a

less serious form of the same offense if doing so will eliminate the violation." *Richardson*, 717 N.E.2d at 54. However, if doing so will not eliminate the violation, the convictions with the least severe penalties must be vacated. *See id.* at 55 (when double jeopardy violation occurs, the proper outcome is to "vacate the conviction with the less severe penal consequences"). As all three of Fagan's convictions may have been based on one act—the push—the only remedy is to vacate two of the convictions. *See Clark v. State*, 732 N.E.2d 1225, 1229 (Ind. Ct. App. 2000) (vacating two attempted arson convictions when all three convictions were based on one act). We therefore vacate Fagan's convictions of Class A misdemeanor resisting law enforcement and Class B misdemeanor disorderly conduct and remand for the trial court to resentence Fagan for Level 6 felony battery against a public safety official.

# Conclusion

[19] Because the jury could have relied on evidence of one act to support all three convictions, Fagan was subjected to double jeopardy. Therefore, we vacate Fagan's convictions for resisting law enforcement and disorderly conduct and remand for the trial court to enter a conviction of and sentence for only Level 6 felony battery against a public safety official.

[20] Reversed in part and remanded.

Riley, J., and Mathias, J., concur.